**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**TAMMTHA MARIE PALEN,**

                         **Plaintiff,**

  vs.                                                3:14-cv-00925
                                                       (MAD)

**COMMISSIONER OF SOCIAL SECURITY,**

                        **Defendant.**
_____

**APPEARANCES:**                              **OF COUNSEL:**

**OFFICE OF PETER W. HILL**          **PETER W. HILL, ESQ.**
P.O. Box 823
384 Main Street
Oneonta, New York 13820-0823
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**   **KRISTINA D. COHN, ESQ.**
Office of Regional General Counsel
Region II
26 Federal Plaza, Room 3904
New York, New York 10278
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    Plaintiff commenced this action on July 24, 2014, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff Tammtha Marie Palen's ("Plaintiff") applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). *See* Dkt. No. 1.

### II. BACKGROUND

Plaintiff's date of birth is November 14, 1974, which made her thirty-six years old at the time she protectively filed for SSI and DIB on August 24, 2011. *See* Dkt. No. 9, Administrative Transcript ("T."), at 142-50, 174. Plaintiff has taken the General Educational Development ("GED") high school equivalency test and received a New York State High School Equivalency Diploma. *See id.* at 179. From the years 1998 through December 2004, Plaintiff worked in the daycare business, *see id.* at 179, and she also worked as a sales clerk in the retail business between the years 2000 and 2002. *See id.* at 163-64. Then Plaintiff did not have any reported income in the years 2005 and 2006. *See id.* at 164, 179. She worked briefly as a cashier for three months in the year 2007, *see id.* at 179, 164, and then opened her own daycare. *See id.* at 165, 179. Plaintiff was self-employed in the years 2008 through April 3, 2011, the date of alleged onset of disability. *See id.* at 165, 179. Plaintiff continued to work in her daycare business after the date of alleged disability, but she changed her work activities and has not earned income greater than $1000 per month since April 3, 2011. *See id.* at 178.

On August 24, 2011, Plaintiff protectively filed applications for DIB and SSI claiming a period of disability that started on April 3, 2011. *See id.* at 142, 174. In her application, Plaintiff lists her disabling conditions as back injury, diabetes, Tarlov cysts, nerve damage, sciatica, leg pain, and hypertension. *See id.* at 178. These applications were both initially denied on November 2, 2011. *See id.* at 71-76. Plaintiff filed a written request for a hearing on December 6, 2011, and the claim was assigned to Administrative Law Judge Elizabeth W. Koennecke (the "ALJ"). *See id.* at 41, 81-82. A hearing was held on February 26, 2013. *See id.* at 41-54. At that hearing, Plaintiff testified that her alleged disabling condition is the result of a motor vehicle accident that occurred in 2004 where she injured her neck and back. *See id.* at 45. Since that accident in 2004, Plaintiff testified that she has been diagnosed with diabetes, hypertension, and

spinal nerve injury. *See id.* at 46. Plaintiff described that she has sharp pains on her left side if she stands too long and that her feet become numb if she sits too long. *See id.* at 47. Her diabetes causes loss of feeling in her fingers and, some nights, she is unable to sleep, which causes her to be unproductive the following day. *See id.* at 48.

According to Plaintiff's testimony, she has to lay down during the day three times per week and rest in between activities, and, if she does not lay down, she becomes "stressed out and tired." *See id.* At the time of the hearing, Plaintiff did not have any side effect from her medications. *See id.* at 49. She was participating in physical therapy for a while and she also swims. *See id.* Plaintiff's daughter helps her with the household chores, especially with the cooking, *see id.* at 50, but Plaintiff cleans the house and does laundry with some modifications. *See id.*

The ALJ issued a decision dated March 21, 2013, finding that Plaintiff was not disabled. *See id.* at 26-35. Plaintiff timely requested review, and when the Appeals Council denied Plaintiff's request for review on June 10, 2014, the ALJ's decision became the Commissioner's final decision. *See id.* at 1-5. In her decision, the ALJ found the following: (1) Plaintiff met the insured status requirements of the Social Security Act through June 30, 2013; (2) Plaintiff has not engaged in substantial gainful activity since April 3, 2011; (3) Plaintiff's physical conditions of degenerative disc disease of the lumbar spine with right side radiculopathy and Tarlov cysts in the sacral region are severe impairments; (4) Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments; (5) Plaintiff has the residual functional capacity ("RFC") to carry out light work as defined in 20 C.F.R. §§ 404.1567(b); 416.967(b) and can occasionally squat and bend; (6) Plaintiff's RFC renders her not capable of performing past relevant work; and, considering Plaintiff's age,

education, work experience, and RFC, (7) there are jobs that exist in significant numbers in the national ecomony that Plaintiff can perform. *See id.* at 26-35. Accordingly, the ALJ found that Plaintiff is not disabled, as defined in the Social Security Act. *See id.*

Plaintiff commenced this action for judicial review of the denial of her claims by the filing of a complaint on July 24, 2014. *See* Dkt. No. 1. Both parties have moved for judgment on the pleadings. *See* Dkt. Nos. 11, 14. Having review the administrative transcript, the Court orders that the Commissioner's decision is affirmed.

## III. DISCUSSION

**A. Standard of Review**

In a judicial review of a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine anew whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Court must examine the administrative transcript to ascertain whether the correct legal standards were applied and whether the decision is supported by substantial evidence. *See Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009); *Schaal v. Apfel*, 134 F.3d 496, 500-01 (2d Cir. 1998). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations and quotations omitted).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial

4

evidence, the Commissioner's finding must be sustained. *See Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). This Court must afford the Commissioner's determination considerable deference, and may not substitute its own judgment, even if a different result could be justifiably reached by the Court if it engaged in its own analysis. *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Analysis**

   *1. Five-step analysis*

   For purposes of both SSI and DIB, a person is disabled when he is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The sequential evaluation process is as follows:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do."

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002) (internal citations omitted)). The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

   *2. RFC*

   Plaintiff contends that the ALJ's determination that Plaintiff has the RFC to perform light work is not supported by substantial evidence and that the ALJ's RFC analysis contained legal

5

errors. *See* Dkt. No. 11 at 7. Specifically, Plaintiff claims that the following legal errors were made in the RFC analysis: (1) the ALJ failed to properly assess Plaintiff's credibility; (2) the ALJ incorrectly weighed the medical opinions; and (3) the ALJ relied upon select medical opinions. *See id.* at 7-14.

A claimant's RFC is the most that person can still do despite the limitations imposed by his or her impairments. *See* 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). The ALJ will consider medical evidence and other evidence such as medical source statements, descriptions, and observations of limitations from the claimant and claimant's family and friends. *See* 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3). The RFC must "identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including" physical abilities such as sitting, standing, walking, lifting, carrying, pushing, pulling, and postural functions, among other abilities. *See* SSR 96-8P, 1996 WL 374184, *1 (July 2, 1996). Only functional limitations that are the result of medically determinable impairments are considered in the RFC assessment. *See id.* Here, the ALJ determined that Plaintiff has the RFC to lift or carry twenty pounds occasionally, lift or carry ten pounds frequently, sit for six hours in an eight hour workday, stand or walk for six hours in an eight hour workday, and occasionally squat and bend. *See* T. at 31.

### i. Plaintiff's Credibility

First, Plaintiff contends that the ALJ's credibility finding is not supported by substantial evidence. *See* Dkt. No. 11 at 14-19. The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible because they were unsupported by competent medical evidence and contradicted by other evidence. *See* T. at 32. The ALJ must assesses a plaintiff's subjective symptoms using a two-step process. *See*

20 C.F.R. §§ 404.1529(c)(1), 404.1545(a)(3), (e); SSR 96-7P, 1996 WL 374186, *1 (July 2, 1996). At the first step, the ALJ must determine whether a plaintiff has an underlying impairment that is established by acceptable clinical diagnostic techniques and could reasonably cause a plaintiff's symptoms. *See* SSR 96-7P, 1996 WL 374186, at *2. If an impairment is shown, the ALJ "must evaluate the intensity, persistence, and limiting effects of the [plaintiff's] symptoms to determine the extent to which the symptoms limit the [plaintiff's] ability to do basic work activities." *See id.* at *2. "When the objective medical evidence alone does not substantiate the claimant's alleged symptoms, the ALJ must assess the credibility of the claimant's statements considering the details of the case record as a whole." *Wells v. Colvin*, No. 13-CV-6593, 2015 WL 770046, *9 (W.D.N.Y. Feb. 24, 2015); *see also Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999).

The entire case record includes a plaintiff's history, laboratory findings, a plaintiff's statements about symptoms, statements and information provided by treating and non-treating physicians, and statements from other people that describe how the symptoms affect a plaintiff. *See* 20 C.F.R. §§ 404.1529(c)(1), 404.1545(a)(3), (e); SSR 96-7P, 1996 WL 374186, *1. Factors that are relevant to a plaintiff's symptoms include: (1) the plaintiff's daily activities, (2) location, duration, frequency, and intensity of symptoms, (3) precipitating and aggravating factors, (4) medications and their side effects, (5) treatment received, (6) measures used to alleviate symptoms, (7) and other factors concerning functional limitations and restrictions due the alleged symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

In this case, the ALJ found that Plaintiff has medically determined impairments that could reasonably be expected to cause the alleged symptoms, and, therefore, the ALJ evaluated Plaintiff's credibility in step two of the analysis. *See* T. 32. Plaintiff claims that she is in constant

7

pain with sharp shooting pain that prevents her from substantial gainful activity. *See id.* at 47-48, 178, 443, 445. Plaintiff's credibility was significantly limited, according to the ALJ, by the fact that she continued to provide child care to a four-year old and six-year old until as recently as the end of 2012. *See id.* at 32. In this work, she occasionally lifted the four-year old, who weighed approximately thirty pounds. *See id.* The ALJ found that these activities of daily living were not consistent with her complaints of pain. *See id.*

The medical evidence showed that despite Plaintiff's complaints of pain to her treating primary care provider, Dr. Karen Banks-Linder, *see id.* at 443, 445, 451, 463, the ALJ noted that Plaintiff was also reporting that she was exercising, trying to exercise more routinely, and, in particular, she was trying to swimming "all the time." *See id.* at 32, 356, 368, 451. The ALJ also took into consideration that Plaintiff reported that she had pain relief after the pain management injections and pain medications, *see id.* at 32, and, in December 2012, Plaintiff was not taking any anti-inflammatory medications or muscle relaxant medications. *See id.* The ALJ has reviewed the whole record and applied the relevant factors before she determined that Plaintiff's statements were not credible.

Moreover, the Court's own review of Plaintiff' hearing testimony demonstrates an inconsistency between the effect of Plaintiff's pain, i.e., stressed out and tired to the degree that she is drained and exhausted, and Plaintiff's description of her daily activities, which include cleaning a whole room in a day, completing other household chores, and child care. *See id.* at 50. Also, Dr. Banks-Linder describes Plaintiff as comfortable and in no acute stress at her medical appointments even when Plaintiff is making subjective complaints of significant pain. *See id.* at 354-96. Plaintiff's other treating physicians also note that she does not appear to be in any apparent distress at those medical appointments. *See id.* at 251, 294, 300, 340. Based upon the

8

ALJ's evaluation of the record, the Court finds that the ALJ's credibility determination is supported by substantial evidence.

### ii. Treating Physician Rule

Under the Regulations, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Rosa*, 168 F.3d at 78-79 (2d Cir. 1999); *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993). An ALJ may refuse to consider the treating physician's opinion only if she is able to set forth good reason for doing so. *Saxon v. Astrue*, 781 F. Supp. 2d 92, 102 (N.D.N.Y. 2011). The less consistent an opinion is with the record as a whole, the less weight it is to be given. *Otts v. Comm'r of Soc. Sec.*, 249 Fed. Appx. 887, 889 (2d Cir. 2007).

The opinion of a treating physician is not afforded controlling weight where the treating physician's opinion contradicts other substantial evidence in the record, such as the opinions of other medical experts. *Williams v. Comm'r of Soc. Sec.*, 236 Fed. Appx. 641, 643-44 (2d Cir. 2007); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (citing 20 C.F.R. § 404.1527(d)(2)). "Although the final responsibility for deciding issues relating to disability is reserved to the Commissioner, an ALJ must give controlling weight to a treating physician's opinion on the nature and severity of a claimant's impairment when the opinion is well-supported by medical findings and not inconsistent with substantial evidence." *See Martin v. Astrue*, 337 Fed. Appx. 87, 89 (2d Cir. 2009) (internal citations omitted). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (citation omitted).

The ALJ's determination to not give Dr. Banks-Linder's opinion controlling weight is supported by substantial evidence. Dr. Banks-Linder completed a residual functional capacity questionnaire on Plaintiff's behalf. *See* T. at 467-70. There is no question in this case that Plaintiff has medically determined impairments that are supported by objective medical evidence. However, the limitations set forth in Dr. Banks-Linder's opinion are contrary to Dr. Banks-Linder's treatment records, other medical records, and Plaintiff's hearing testimony of her daily living activities.

Dr. Banks-Linder opines that Plaintiff has numbness and tingling in her hands, which are cold, and that her left foot gets numb with a prickly sensation and both legs "feel heavy." *See id.* at 468. Based upon these "medical findings," the physician opined that Plaintiff is only occasionally able to use her hands for simple grasping and fine manipulation. *See id.* Also, Plaintiff is only occasionally able to use her feet according to Dr. Banks-Linder. *See id.* Contrary to those opinions, Dr. Banks-Linder states repeatedly in the treatment records that Plaintiff's bilateral upper and lower extremities were: (1) normal to inspection and palpation, (2) did not have tenderness or swelling, (3) had full range of motion, (4) has intact motor strength, (5) good capillary refill, (6) normal peripheral blood circulation, and (7) equal and warm temperature. *See id.* at 354-96. Plaintiff's treating doctor from Neuro Medical Care Associates finds that Plaintiff's extremities are all normal except for a decreased pin prick sensation in her hands. *See id.* at 399.

Ultimately, Dr. Banks-Linder opines in her questionnaire that Plaintiff is not able to work due to "pain." *See id.* at 469. However, as the ALJ discussed, Dr. Banks-Linder states in her treatment records at each of Plaintiff's medical appointments that Plaintiff does not appear to be in any acute distress and that she appears healthy and comfortable. *See id.* at 354-96. In fact, Dr. Banks-Linder makes this observation of Plaintiff even on dates where Plaintiff is making

10

subjective complaints of significant pain. *See id.* at 354-96. Dr. Banks-Linder was not the only treating physician to make this observation. Plaintiff's pain management physician also noted at his physical examinations that Plaintiff was in no apparent distress on at least three occasions. *See id.* at 394, 300, 340. The pain management physician also found that Plaintiff has mild lumbar spasm with mild decreased range of motion on flexion and extension. *See id.* at 294, 300, 340, 342-43, 462.

As the ALJ notes, Dr. Banks-Linder's treatment records reflect that Plaintiff reported that she was exercising, in particular, she was trying to swim "all the time." *See id.* at 32, 356, 368, 451. Further, Dr. Banks-Linder was regularly recommending that Plaintiff exercise. 355, 380, 446, 450, 454. Dr. Banks-Linder's opinion that Plaintiff is unable to work due to disabling pain is inconsistent with Plaintiff's ability to swim and exercise at increasing frequency. *See id.* at 32. Also noted by the ALJ, Plaintiff was able to occasionally lift a chid weighing thirty pounds in the course of her work as a child care provider, *see id.* at 32, but Dr. Banks-Linder opined that she could never lift or carry over twenty-five pounds. *See id.* at 469.

Plaintiff argues that it was an error to discount Dr. Banks-Linder's opinion on the grounds that the opinion was based only on Plaintiff's subjective complaints. *See* Dkt. No. 11 at 10-12. Plaintiff's review of the ALJ's decision is not accurate because, as described above, the ALJ's decision to discount the opinion had more than one basis. *See* T. at 32-33. The ALJ evaluated Dr. Banks-Linder's treatment records, objective medical evidence, and Plaintiff's hearing testimony before discounting Dr. Banks-Linder's RFC opinions. After undertaking an evaluation of that evidence, it can be appropriate to discount the opinion of a treating physician. *See Bodoh v. Colvin*, No. 5:14-CV-1004, 2015 WL 5512442, *5 (N.D.N.Y. Sept. 15, 2015) (finding that it is appropriate to discount a treating physician's opinion where Plaintiff's subjective complaints were

11

the basis for the opinion and the ALJ also considered the plaintiff's conservative treatment and the inconsistent medical evidence).

Even if it was the sole basis for discounting the opinion, the Court would find that it was not legal error. If a treating physician's opinion is only based on a plaintiff's subjective complaints, it is "a specific, legitimate reason" to reject that opinion if the plaintiff's credibility has already been properly discounted. *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989); *see also Truitt v. Barnhart*, 127 Fed. Appx. 273, 275 (9th Cir. 2005) (noting that the treating physician's opinion was "predicated upon" the plaintiff's credibility regarding his pain, which the ALJ had just rejected). Here, the ALJ properly found that Plaintiff was not credible in her statements concerning intensity, persistence, and limiting effects of her symptoms, and, therefore, it was appropriate to assign less than controlling weight to Dr. Banks-Linder's opinion that relied upon those subjective complaints.

Next, Plaintiff argues that Dr. Banks-Linder's opinion should not have been discounted based upon the ALJ inference that Plaintiff's pain was less severe because Plaintiff's treatment was conservative. *See* Dkt. No. 11 at 12. An ALJ may not impose his or her "notion[s] that the severity of a physical impairment directly correlates with the intrusiveness of the medical treatment ordered." *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008). However, the ALJ is permitted to take into consideration a plaintiff's conservative medical treatment as additional evidence supporting his or her determination. *See Bodoh*, 2015 WL 5512442, at *5 (citing *Netter v. Astrue*, 272 Fed. Appx. 54, 56 (2d Cir. 2008). Again, for the reasons already stated, the ALJ's determination to discount the treating physician's opinion was not solely based on Plaintiff's conservative treatment, but it also encompassed Plaintiff's treatment records, consultant physicians' reports, and Plaintiff's testimony. The Court finds that the ALJ did not err in her

12

determination to not give controlling weight to Dr. Banks-Linder, and the Court also finds that there is substantial evidence to support that determination.

When an ALJ does not assign a treating physician's opinion controlling weight, she or he must consider a number of factors to determine the appropriate weight to assign, including: (i) the frequency of the examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. *See* 20 C.F.R. § 404.1527(c); *Shaw*, 221 F.3d at 134.

In this case, the ALJ assigned Dr. Banks-Linder's opinion little weight. *See* T. at 33. Plaintiff contends that the ALJ did not properly consider the regulatory factors before assigning that weight. *See* Dkt. No. 11 at 9-14. Although the ALJ did not clearly delineate her analysis of each of these factors, it is clear to this reviewing Court that the ALJ applied the substance of the treating physician rule, and the ALJ gave good reasons for applying the weight she assigned. The decision reflects that the ALJ was aware of Plaintiff's long-term treatment relationship with Dr. Banks-Linder. The ALJ cites to findings regularly made by Dr. Banks-Linder in the treatment records. *See* T. at 33. Under these circumstance, remand is not necessary. *See Halloran v. Barnhart*, 362 F.3d at 28, 32 (2d Cir. 2004) (concluding that the treating physician rule was not traversed where the ALJ applied the substance of that rule).

Plaintiff also argues that it was legal error to accord great weight to the opinions of Dr. Mary McLarnon and Dr. S. Putcha because both physicians are consultants. *See* Dkt. No. 11 at 13. Plaintiff claims that consultant physicians can never be given great weight. *See id.* This assertion is not correct. "The report of a State agency medical consultant constitutes expert

opinion evidence which can be given weight if supported by medical evidence in the record." *Frye ex rel. A.O. v. Astrue*, 485 Fed. Appx. 484, 487 (2d Cir. 2012); *see also Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 79 (N.D.N.Y. 2005); *Vanterpool v. Colvin*, No. 12-CV-8789, 2014 WL 1979925, *16 (S.D.N.Y. May 15, 2014). Here, the reports of Dr. Putcha and Dr. McLarnon are entitled to great weight because they are consistent with Plaintiff's treatment records, including Dr. Banks-Linder's records, and Plaintiff's activities of daily life.

### iii. Selective Evidence

Plaintiff contends that the ALJ improperly selected portions of the evidence to support her findings. *See* Dkt. No. 11 at 8-9. Plaintiff is correct that an ALJ is not permitted to "pick and choose" only those portions of evidence that supports his or her conclusions. *Kuleszo v. Barnhart*, 232 F. Supp. 2d 44, 57 (W.D.N.Y. 2002); *see also Sutherland v. Barnhart*, 322 F. Supp. 2d 282, 289 (E.D.N.Y. 2004) ("It is not proper for the ALJ to simply pick and choose from the transcript only such evidence that supports his determination, without affording consideration to evidence supporting the plaintiff's claims"). However, the Court has completed a thorough reviewed of the administrative record, and it does not find that the ALJ engaged in a selective review of the evidence to support her findings.

Plaintiff points to Dr. Banks-Linder's opinion that Plaintiff would be absent from work more than three times per week and objective medical evidence to support Plaintiff's medical conditions. *See* Dkt. No. 11 at 8-9. Contrary to Plaintiff's contention, the objective medical evidence was not neglected by the ALJ but was considered in determining Plaintiff's severe impairments at step two of the analysis. *See* T. at 29-30. It was also considered in Plaintiff's credibility analysis. *See id.* at 32. With regard to the opinions of Dr. Banks-Linder, there is substantial evidence to support the ALJ's findings on Plaintiff's credibility and the weight

accorded to Dr. Banks-Linder for the reasons already stated. The treating physician opinions were appropriately considered along with all the medical evidence. The Court does not find that the ALJ selectively relied upon only portions of the medical evidence in this case.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the Commissioner's decision denying disability benefits is **AFFIRMED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED**

Dated: September 30, 2015
   Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge